UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GUSTAVIA HOME LLC,

                    Plaintiff,        Case No: 1:17-cv-04188-MKB-SMG

    -against-

10586 FLATLANDS 1 REALTY CORP.;
JP MORGAN CHASE BANK, N.A.;
ATLANTIC CREDIT & FINANCE INC.;
NEW YORK CITY DEPARTMENT OF
FINANCE; and NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD,
                    Defendants.
--------------------------------------------------------x

**DECLARATION OF MICHAEL B. WOLK, ON BEHALF OF THE DEFENDANT-OWNER 10586 FLATLANDS 1 REALTY CORP. (A) IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (B) IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND/OR DUE TO THE EXPIRATION OF THE STATUTE OF LIMITATIONS**

MICHAEL B. WOLK, an attorney admitted to practice law in the United States District Court for the Eastern District of New York, hereby declares under penalty of perjury, pursuant to 28 U.S.C. 1746, as follows:

1.     I am the attorney for the Defendant 10586 Flatlands 1 Realty Corp. (the "Owner"), the owner of the real property that is the subject of this case. Unless otherwise indicated, I am fully familiar with all facts and circumstances set forth herein based upon my personal knowledge or the documentary evidence attached hereto. This Declaration, and the exhibits annexed hereto, are respectfully submitted in opposition to (a) a motion for summary judgment by Plaintiff Gustavia Home LLC ("Plaintiff" or "Gustavia" or "Second Mortgagee") and (b) in support of the Owner's cross-motion for summary judgment to dismiss Plaintiff's complaint on various grounds, such as for lack of subject

1

matter jurisdiction and/or due to the expiration of the statute of limitations. All terms not defined herein shall have the same meanings given to them in the accompanying Memorandum of Law, dated June 25, 2018, submitted on behalf of the Owner.

2. On or about June 18, 2007, the First National Bank of Arizona ("FNBA" or "Original First Mortgagee"), as the original first mortgage lender, and Valerie A. Dupont ("Dupont"), as the borrower, and as the then-owner of a residential property having a street address of 10586 Flatlands Avenue, Brooklyn, New York (the "Property"), entered into a first mortgage loan transaction, pursuant to which FNBA loaned the principal sum of $568,000 to Dupont, repayment of which, together with interest thereon, was secured by FNBA's first mortgage lien against the Property (the "First Mortgage"). On or about July 24, 2007, the First Mortgage was recorded against the Property with the New York City Register's Office in Kings County. See Exhibit A hereto, consisting of a Verified Complaint, filed on August 7, 2009, commencing the first state court foreclosure case involving the First Mortgage and Second Mortgage on the Property (the "2009 State Court Foreclosure").

3. On or about June 18, 2007, the same date as the origination of the First Mortgage, National City Bank ("NCB" or "Original Second Mortgagee"), as the original second mortgage lender, and Dupont, as the borrower, and as the then-owner of the Property, entered into a second mortgage loan transaction, pursuant to which NCB loaned the principal sum of $142,000 to Dupont, repayment of which, together with interest thereon, was secured by NCB's second mortgage lien against the Property (the "Second Mortgage"). On or about January 22, 2008, the Second Mortgage was recorded against the Property with the New York City Register's Office in Kings County. See Exhibits B

and C to Plaintiff's complaint, which complaint in turn is attached to Plaintiff motion papers as Exhibit A thereto.

4. Starting in August 2008 and for each month thereafter, Dupont defaulted under the First Mortgage and Second Mortgage. See Exhibit A hereto, the verified complaint commencing the 2009 State Court Foreclosure.

5. On or about July 9, 2009, FNBA, as the Original First Mortgagee, delivered an assignment of the First Mortgage Loan to an investment entity called Residential Mortgage Trust 2008 R-1 ("RMT" or "First Mortgagee"). See Exhibit A hereto.

6. On or about August 9, 2009, RMT, as First Mortgagee, commenced the 2009 State Court Foreclosure by filing a verified foreclosure complaint. *Id.*

7. NCB, as the Original Second Mortgagee, was named as a party-defendant in the 2009 State Court Foreclosure in order to terminate the Second Mortgage as a subordinate lien against the Property - - and to have a First Mortgage foreclosure sale of the Property free and clear of the Second Mortgage. *Id.*

8. Paragraphs 7-8 in the verified complaint in the 2009 State Court Foreclosure provide that, in response to Dupont's mortgage defaults since August 1, 2008 (and each month thereafter), the First Mortgagee had accelerated the First Mortgage Debt so as to make the same immediately due and payable. *Id.*

9. In its answer with counterclaim, the Owner has asserted that, in response to Dupont's mortgage defaults starting in August 2008 (and each month thereafter), NCB, as the Original Second Mortgagee, elected to enforce its Second Mortgage - - just like the First Mortgagee elected to enforce its First Mortgage - - in connection with the August 9,

2009 commencement date of the 2009 State Court Foreclosure (or on some date prior thereto in response to the mounting monthly defaults). A copy of the Owner's answer with counterclaim is attached as Exhibit B to Plaintiff's motion papers (see pars. 11-19).

10. Significantly, Plaintiff's summary judgment motion fails to provide any information or documents from NCB, the Original Second Mortgagee, as to whether NCB elected to enforce its Second Mortgage - - just like the First Mortgagee elected to enforce its First Mortgage - - in connection with the August 9, 2009 commencement date of the 2009 State Court Foreclosure (or on some date prior thereto in response to the mounting monthly defaults).

11. As a result, since Plaintiff has failed to address this factual issue, and since the entire loan history for the Second Mortgage is presumably in Plaintiff's possession, there is a genuine issue of material fact as to whether NCB, the Original Second Mortgagee, elected to enforce its Second Mortgage - - just like the First Mortgagee elected to enforce its First Mortgage - - in connection with the August 9, 2009 commencement date of the 2009 State Court Foreclosure (or on some date prior thereto in response to the mounting monthly defaults).

12. However, by not later than October 9, 2009, NCB elected to enforce the Second Mortgage against the Property during the 2009 State Court Foreclosure - - triggering a six year statute of limitations, under CPLR 213(4), for enforcement of the Second Mortgage against the Property. See Exhibit B annexed hereto.

13. On October 9, 2009, NCB filed a litigation document during the 2009 State Court Foreclosure in which NCB affirmatively asserted a "Claim To Surplus Monies" - - by

which the Second Mortgage would be enforced against the Property through the Second Mortgagee's recovery of any foreclosure sale proceeds that might remain after payment of the First Mortgage (the "2009 Second Mortgage Enforcement"). See Exhibit B hereto.

14. The Court is respectfully referred to the Owner's memorandum of law for the appellate precedent indicating that (a) the litigation filing of the 2009 Second Mortgage Enforcement triggered a six year statute of limitations, under CPLR 213(4), for enforcement of the Second Mortgage against the Property; (b) regardless of whether the Second Mortgage was originally enforced by NCB, the Original Second Mortgagee, on October 9, 2009 (or prior thereto), the six year statute of limitations for enforcement of the Second Mortgage expired by not later than October 9, 2015 - - about 21 months before Plaintiff, as the alleged assignee of the Second Mortgage, commenced the instant action to enforce the Second Mortgage; and (c) pursuant to CPLR 213(4), Plaintiff's second mortgage foreclosure case should be dismissed based upon the expiration of the statute of limitations - - unless this case is dismissed, as a threshold matter, for lack of subject matter jurisdiction.

15. By Order, dated August 20, 2012, the 2009 State Court Foreclosure was dismissed for neglect to prosecute. See Exhibit C annexed hereto.

16. On or about April 14, 2014, another state court foreclosure against the Property was commenced, this time by an assignee of the First Mortgage. NCB, the original Second Mortgagee, was again named as a party-defendant in order to terminate its subordinate lien against the Property. See *Wells Fargo Bank, N.A., not in its individual or banking capacity, but solely as Trustee for The Residential Mortgage Trust 2008 R-1 (Plaintiff) vs. Valerie A. Dupont a/k/a Valerie Dupont, Ghislaine Ladjouan, National City*

*Bank, JP Morgan Chase Bank, N.A., Atlantic Credit & Finance Inc. A/P/O HSBC, New York City Department of Finance, LVNV Funding LLC A/P/O GE Capital, Arrow Financial Services, LLC, New York City Environmental Control Board, and "John Doe #1" through "John Doe #10" (Defendants),* Supreme Court of the State of New York, County of Kings, Index No: 503210/2014 (the "2014 State Court Foreclosure"). A copy of the filed foreclosure complaint in the 2014 State Court Foreclosure is annexed hereto as part of Exhibit D.

17. The filed foreclosure complaint in the 2014 State Court Foreclosure (a) references the 2009 State Court Foreclosure, (b) states that, based upon the prior defaults dating back to the summer of 2008, the mortgagee had previously "elected" to accelerate the mortgage debt and, "by virtue of such acceleration" the mortgage debt was accelerated as of July 1, 2008 and (c) the mortgagee "shall not be deemed to have waived, altered, released or changed the election hereinbefore made" to accelerate the mortgage debt. See Exhibit D hereto.

18. Despite service of process, NCB, as Second Mortgagee, did not appear during the 2014 State Court Foreclosure. Significantly, NCB did not file any litigation document in the 2014 State Court Foreclosure challenging, or purporting to revoke, the 2009 Second Mortgage Enforcement from the 2009 State Court Foreclosure.

19. During October 2016, the Owner acquired the Property, subsequent to the dismissal of the 2014 State Court Foreclosure, and subsequent to the expiration of the statute of limitations to enforce the First Mortgage and Second Mortgage on the Property. A copy of the dismissal order for the 2014 State Court Foreclosure is annexed hereto as

part of Exhibit D. A copy of the Owner's deed to the Property, recorded on October 20, 2016, is annexed hereto as Exhibit E.

20. On February 16, 2017, Plaintiff, as a claimed assignee of the Second Mortgage, commenced a foreclosure case in this Court. See *Gustavia Home, LLC v. Valerie A. Dupont, 10586 Flatlands 1 Realty Corp., et al.*, United States District Court for the Eastern District of New York, Case No. 1:17-cv-00903-NG-PK. Two months later, and prior to service of process on any defendant, Plaintiff voluntarily discontinued the case. See Dkt. 8-9 therein.

21. On July 14, 2017, Plaintiff, as a claimed assignee of the Second Mortgage, commenced this foreclosure case by filing a complaint with this federal court. Dkt. 1 (and Exh. A to Plaintiff's motion papers). In response, the Owner filed an answer with counterclaim. Dkt. 14 (and Exh. B to Plaintiff's motion papers). In the Owner's answer with counterclaim, the Owner asserted affirmative defenses seeking to dismiss this case based upon, *inter alia*, (a) lack of subject matter jurisdiction; (b) the expiration of the statute of limitations to enforce the Second Mortgage; and (c) Plaintiff lacks authority to sue on the Second Mortgage. *Id.*

22. Neither Plaintiff nor Owner served any discovery prior to the filing of the parties' summary judgment motions.

**SUBJECT MATTER JURISDICTION**

23. Plaintiff's complaint alleges, in conclusory fashion, that it is "a single-member limited liability company" that is "organized under Florida law with its principal place of business located at 104 SE 8th Avenue, Fort Lauderdale, Florida 33301" and whose "single-member is an individual who is a citizen of the United States and who is

domiciled in the State of Florida." See pars. 2-4 in Plaintiff's complaint, Exhibit A to Plaintiff's motion papers. The Owner's first affirmative defense in its answer with counterclaim seeks the dismissal of this case on the ground of lack of subject matter jurisdiction. See Exhibit B to Plaintiff's motion papers.

24. Plaintiff's summary judgment papers contain an affidavit from an individual by the name of Jared Dotoli, who asserts in paragraph 1 therein that "I am a member of Gustavia Home, LLC", and who asserts in paragraph 17 therein that he is "domiciled in the State of Florida"

25. Documentary evidence, however, reveals that Yonel Devico, a New York citizen, is a member of Plaintiff limited liability company - - thereby defeating diversity jurisdiction.

26. **First**, in a Recorded Deed on December 28, 2017, Gustavia Home, LLC, the Plaintiff in this case, acquired a foreclosure sale deed to a Brooklyn, New York residential property located at the street address of 2316 Clarendon, Tax Lot 7, Tax Block 5189 (the "Gustavia-Devico Deed"). **The Gustavia-Devico Deed contains an Affidavit of Compliance, sworn to December 8, 2017, signed by "Yonel Devico, sole member" of Gustavia Home, LLC**. A copy of the Gustavia-Devico Deed is annexed hereto as part of Exhibit F.[1]

27. **Second**, in a Registered Agent Change filed on November 14, 2016 with the Florida Secretary of State (the state in which Gustavia Home, LLC was formed on

---

[1] Thereafter, a duplicate deed was recorded for this same property on behalf of Gustavia Home, LLC, in which the same signature of "Yonel Devico, sole member" appears, to wit: the same Yonel Devico name and the same Yonel Devico signature as set forth in the previously recorded Gustavia-Devico Deed. In this duplicate deed, there is one addition, with the name "Alan Weinreb, Esq, authorized" added to the signature space, alongside Yonel Devico's signature as "sole member" of Gustavia Home, LLC. Attorney Weinreb's firm represents Gustavia Home, LLC in this case. A copy of this duplicative deed is annexed hereto as part of Exhibit F.

October 9, 2015), **the listed email address for Gustavia Home, LLC is Yonel Devico's email address** of yoneldevico@gmail.com. And, when Gustavia Home, LLC was formed on October 9, 2015, the articles of organization filed with the secretary of state **list Yonel Devico's family member, Simy Devico, as the initial managing member of the Plaintiff limited liability company**. A copy of these documents filed with the secretary of state are annexed hereto as Exhibit G.

28. **Third**, on August 29, 2017, in a foreclosure action in this Court, a residential property mortgagor named Cassandra Hickson filed an affidavit in support of her motion to vacate a default judgment of foreclosure and sale procured by Guatavia Home, LLC, on the ground of fraud and lack of service. In her affidavit, Ms. Hickson attests that, prior to the entry of the default judgment against her in favor of Gustavia Home, LLC, (a) **she had previously entered into a business arrangement with Yonel Devico on behalf of Gustavia Home, LLC**, (b) she first met Yonel Devico in August 2016 in Manhattan, in the presence of attorneys, to discuss her business arrangement with Gustavia Home, LLC, (c) she stated that "When I contacted Devico in February 2017, he told me not to worry about Gustavia's foreclosure because it was just a means of cleaning up liens against the property, but ultimately I would walk away with the deed to my property"; and (d) she stated that "Again, Devico told me that Gustavia's foreclosure action was for my benefit and that I should not worry." See *Gustavia Home, LLC v. Cassandra Hickson, et al.,* United States District Court for the Eastern District of New York, Case No. 1:16-cv-03098, Dkt. 82. A copy of Ms. Hickson's affidavit is annexed hereto as part of Exhibit H.

29. **Fourth**, on February 9, 2017, Yonel Devico signed an affidavit in another foreclosure case stating that he is "the member" of another "out-of-state" plaintiff limited liability company "with its principal place of business located at 104 SE 8th Avenue, Suite 2, Fort Lauderdale, Florida 33301" - - **which is the same principal place of business for Gustavia Home, LLC in Plaintiff's complaint in this case**. A copy of Mr. Devico's affidavit is annexed hereto as part of Exhibit H.

30. **Fifth**, in another foreclosure action in this Court, counsel for a residential property mortgagor obtained non-party documents, filed as a public record in that case, indicating that Yonel Devico, a New York citizen, was, in fact, acting as the real party in interest exercising ownership or management control over the out-of-state, plaintiff limited liability company and, therefore, the foreclosure action should be dismissed for lack of subject matter jurisdiction. See *BSI Mortgage IV, LLC v. Vekram Kaushik, et al.*, United States District Court for the Eastern District of New York, Case No. 14-cv-01640-LDW-ARL. A copy of the documents regarding Yonel Devico's connections to that plaintiff limited liability company is annexed hereto as Exhibits I-L.

31. This Court dismissed that foreclosure action based upon another threshold jurisdictional ground - - thereby obviating any need in that case to adjudicate Yonel Devico's connection to the out-of-state limited liability company therein. See Exhibit M hereto. The jurisdictional ground invoked by this Court involved RPAPL 1301, which statutorily prohibits a mortgagee from pursuing a foreclosure action in any court where a preexisting foreclosure action on the same mortgage is already pending in a previously-commenced case. See Exhibit M hereto.

32. The Court is respectfully referred to the Owner's memorandum of law for the appellate precedent indicating that Plaintiff has failed to satisfy its burden of proof that diversity jurisdiction exists because documentary evidence reveals that Yonel Devico, a New York citizen, is (a) a member of Plaintiff limited liability company, as set forth in publically recorded documents and/or (b) a "real and substantial party to the controversy" who exercises control over Plaintiff's foreclosure business against New York properties andwho receives the proceeds of a litigation recovery - - through his use of an out-of-state" nominal LLC member" as a "conduit" to obtain the remedy of an expedited adjudication in a New York Federal Court.

\*\*\*

33. Moreover, **in the alternative**, even if Yonel Devico had no ownership or management connection to the Plaintiff limited liability company, documentary evidence reveals that Plaintiff acquired the Second Mortgage, by assignment, from a New York assignor, without Plaintiff's payment of "meaningful consideration" to the New York assignor - - thereby manipulating diversity jurisdiction in violation of 28 U.S.C. 1359.

34. 28 U.S.C. 1359, captioned "Parties collusively joined or made", limits a federal court's exercise of diversity jurisdiction in the following circumstances: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

35. Here, Plaintiff claims that it acquired the Second Mortgage, by assignment, from a New York assignor called NPL Capital, LLC, on an unidentified date, and without presenting any proof that Plaintiff paid any "meaningful consideration" for the

assignment. See one-page Allonge in Exhibit C to Plaintiff's complaint, which is attached to Plaintiff's summary judgment papers as Exhibit A thereto, purporting to assign ownership of the Second Mortgage Note from NPL Capital, LLC to Plaintiff, on an unidentified date, and without reciting that Plaintiff paid any consideration whatsoever for the assignment.

36. Tellingly, not only has Plaintiff failed to produce any proof that it paid any "meaningful consideration" for the Second Mortgage assignment, but Plaintiff has also failed to produce a recorded assignment of the Second Mortgage from NPL Capital, LLC. Indeed, a review of the publically available real estate records for the Property through New York City's ACRIS website, which are judicially noticeable, confirms there is no recorded assignment of the Second Mortgage from NPL Capital, LLC to Plaintiff.

37. According to publically available New York City real estate records, over the last two years, NPL Capital, LLC acquired ownership of other New York City properties, pursuant to which NPL Capital, LLC has represented that it is a New York company operating out of Manhattan at the street address of 228 Park Avenue South. See Exhibit N hereto.

38. The Court is respectfully referred to the Owner's memorandum of law for the appellate precedent indicating that Plaintiff has failed to satisfy its burden of proof that diversity jurisdiction exists because documentary evidence reveals that Plaintiff acquired the Second Mortgage, by assignment, from a New York assignor, without Plaintiff's payment of "meaningful consideration" to the New York assignor - - thereby manipulating diversity jurisdiction in violation of 28 U.S.C. 1359.

### STATUTE OF LIMITATIONS

**39.** The Court is respectfully referred to pages 3-5 herein, and pages 3-6 in the Owner's Memorandum of Law, for the relevant facts, and appellate precedent, indicating that, if this case is not dismissed for lack of subject matter jurisdiction, then Plaintiff's case should be dismissed, in the alternative, due to the expiration of the six year statute of limitations, under CPLR 213(4), for the enforcement of the Second Mortgage against the Property.

### AUTHORITY TO SUE

**40.** The Owner's answer asserts additional affirmative defenses for dismissal of this case based upon the ground that Plaintiff lacks authority to sue on the Second Mortgage. See Exhibit B to Plaintiff's summary judgment papers.

**41.** Here, Plaintiff lacks authority to sue on the Second Mortgage because Plaintiff purports to have acquired the Second Mortgage by assignment - - but the documentary evidence adduced by Plaintiff reveals that NCB, the Original Second Mortgagee, did not assign the Second Mortgage to anyone.

**42.** First, Plaintiff's summary judgment papers contain no recorded assignment of the Second Mortgage from NCB, the Original Second Mortgagee, to anyone - - much less any recorded assignment of the Second Mortgage into NCL Capital, LLC (as Plaintiff's New York assignor) or, in turn, any recorded assignment of the Second Mortgage from NCL Capital, LLC into Plaintiff. Indeed, a review of the publically available real estate records for the Property through New York City's ACRIS website, which are judicially

noticeable, confirms there is no recorded assignment of the Second Mortgage from NCB, the Original Second Mortgagee, to anyone - - much less any recorded assignment of the Second Mortgage into NCL Capital, LLC (Plaintiff's New York assignor) or, in turn, any recorded assignment of the Second Mortgage from NCL Capital, LLC into Plaintiff.

**43.** Second, within Exhibit C to Plaintiff's complaint (which complaint, in turn, is Exhibit A to Plaintiff's motion papers) contains Allonges that are from Summit Real Estate Partners, L.P. to NCL Capital, LLC, and from NCL Capital, LLC to Plaintiff - - but do not contain an Allonge from NCB, as the Original Second Mortgagee, to Summit Real Estate Partners, L.P. (or to anyone else).

**44.** Thus, due to the absence of any documentary evidence that NCB, as the Original Second Mortgagee, assigned the Second Mortgage to anyone (much less to Summit Real Estate Partners, L.P.), there is a break in the chain of title through which Plaintiff claims to have become a third assignee of the Second Mortgage after its origination by NCB, as the Original Second Mortgagee.

45. The Court is respectfully referred to the Owner's Memorandum of Law for appellate precedent indicating that, due to this break in the chain of title for the Second Mortgage, the Plaintiff has failed to satisfy its burden of proof that the Plaintiff is, in fact, the legal owner of the Second Mortgage authorized, in fact, to sue on the Second Mortgage in this case.

Dated: June 25, 2018
      New York, New York

                                                   _____/s/_____
                                                          Michael B. Wolk